Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JEANETTE RODRÍGUEZ CLAUDIO<br><br>Parte Apelante<br><br>v.<br><br>ASOCIACIÓN DE EMPLEADOS DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO (AEELA)<br><br>Parte Apelada | TA2025AP00328 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: S J2023CV04545 (902)<br><br>Sobre: Ley de Represalias (Ley 115 de 1991); Cobro de mesada por despido injustificado (Ley 80); Procedimiento Sumario bajo la Ley Núm. 2 de 17 de octubre de 1961, según enmendada (32 LPRA 3118; ET SEQ) |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.[1]

Trigo Ferraiuoli, Jueza Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 12 de diciembre de 2025.

Comparece ante nos la Sra. Jeanette Rodríguez Claudio (señora Rodríguez Claudio o apelante) mediante recurso de apelación. Nos solicita que revoquemos una *Sentencia* emitida el 3 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar una *Solicitud de Sentencia Sumaria* presentada por la Asociación de Empleados del Estado Libre Asociado de Puerto Rico (AEELA o apelada). El 18 de julio de 2025, la parte apelante presentó una *Solicitud de Determinaciones de Hechos Adicionales y Moción de Reconsideración al Amparo de las Reglas 43 y 47 de las de*

---

[1] Mediante la Orden Administrativa OATA-2025-242 y debido a la inhibición del Juez Adames Soto, se modificó la integración del Panel.

*Procedimiento Civil,* la cual fue declarada No Ha Lugar por el TPI el 11 de agosto de 2025.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

## I. Trasfondo Procesal y Fáctico

El caso de epígrafe tuvo su génesis el 16 de mayo de 2023, cuando la parte apelante presentó una *Querella*[2] contra la parte apelada. La referida *Querella* fue presentada al amparo de la *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o Judicial*[3] (Ley de Represalias), la *Ley Sobre Despidos Injustificados*[4] (Ley de Despido Injustificado), y la *Ley de Procedimiento Sumario de Reclamaciones Laborales*[5].

En su escrito, aseveró que comenzó a trabajar para AEELA el 15 de septiembre de 2005 de manera ininterrumpida, hasta su despido el 26 de mayo de 2022. Adujo que, al momento de su cesantía, ocupaba el puesto de Gerente en la División de Cobro Legal (DCL), el cual había desempeñado desde el 5 de agosto de 2013. En apretada síntesis, sostuvo que fue despedida de manera injustificada, en violación a la Ley de Despido Injustificado. Alegó, además, que fue despedida en violación a la Ley de Represalias tras haber participado en una actividad protegida al amparo del mencionado estatuto. En esencia, arguyó que prestó testimonio en un foro judicial, cuyo resultado fue alegadamente adverso para AEELA. También indicó que participó en una actividad protegida por haberse defendido del proceso interno de Recursos Humanos de AEELA.

---

[2] Civil Núm. SJ2023CV04545; Véase, Entrada Núm. 1 de SUMAC-TPI.
[3] Ley Núm. 115 de 20 de diciembre de 1991 (29 LPRA secs. 194 *et seq*).
[4] Ley Núm. 80 de 30 de mayo de 1976 (29 LPRA secs. 185a *et seq*).
[5] Ley Núm. 2 de 17 de octubre de 1961 (32 LPRA secs. 3118 *et seq*).

Es por ello que, solicitó al foro apelado que declarase Ha Lugar la *Querella* y ordenase a AEELA pagar lo siguiente:

> a) Daños líquidos y compensatorios a tenor con la Ley Núm. 115 en una suma no menor de $500,000.00, suma que deberá ser duplicada conforme a dicho estatuto;
>
> b) Ordene la reinstalación de la querellante en su empleo y el pago de los salarios dejados de percibir desde la fecha de su despido hasta que sea reinstalada, a razón de la suma mínima de $6,646 mensuales;
>
> c) En la alternativa, condenando a la Querellada al pago de una suma en concepto de la mesada por despido injustificado a ser computada a tenor con lo dispuesto en el Artículo 1 de la Ley Núm. 128 de 7 de octubre de 2005, ascendente a $113,460;
>
> d) Honorarios de abogado en una suma no menor de 25% de la indemnización base concedida a la querellante;
>
> e) Los gastos y costas del procedimiento;
>
> f) Intereses moratorios sobre la cuantía concedida en la Sentencia desde la fecha de efectividad del despido o, en la alternativa, desde la fecha de presentación de esta Querella;
>
> g) Cualquier otro remedio en ley que sea justo y razonable.[6]

Posteriormente, el 30 de mayo de 2023, AEELA presentó su *Contestación a Querella*.[7] En resumen, la parte apelada negó que se hubiese configurado una causa de acción por despido injustificado y de represalias, y sostuvo que el despido de la señora Rodríguez Claudio estuvo justificado conforme a lo establecido por el estado de Derecho vigente. Adujo que a lo largo de su empleo en AEELA, la apelante cometió varias faltas contempladas en el *Manual de Normas de Conducta y Medidas Disciplinarias Aplicables al Personal Gerencial y de Alta Gerencia de AEELA* (Manual de Medidas Disciplinarias).

Superados varios incidentes procesales, incluyendo la conversión del pleito sumario a uno de procedimiento ordinario[8] y el comienzo de la etapa de descubrimiento de prueba[9], el 11 de junio de 2024, AEELA presentó una *Solicitud de Sentencia Sumaria*.[10] En suma, alegó que no existían hechos materiales en controversia, por

---

[6] Véase, Entrada Núm. 1 de SUMAC-TPI.
[7] Véase, Entrada Núm. 10 de SUMAC-TPI.
[8] Véase, Entrada Núm. 23 de SUMAC-TPI.
[9] Véase, Entrada Núm. 24 de SUMAC-TPI.
[10] Véase, Entrada Núm. 45 de SUMAC-TPI.

lo que procedía aplicar el Derecho correspondiente y dictar sentencia sumaria. Con respecto a la causa de acción por represalias, arguyó que su reclamación estaba basada en un hecho meramente incidental, cuyo resultado ocurrió después del despido. Argumentó así, que no estaba presente el elemento del nexo causal entre la acción protegida y la acción adversa, el despido. Referente a la causa de acción por despido injustificado, añadió que la señora Rodríguez Claudio actuó en violación de, mínimo, cuatro (4) deberes básicos, por lo que su conducta laboral incumplió con las expectativas de la apelada, las cuales a su vez eran conocidas por la apelante. Por lo tanto, peticionó al TPI que declarase Con Lugar la moción y desestimase la *Querella* en cuestión.

Así las cosas, el 8 de agosto de 2024, la señora Rodríguez Claudio presentó su *Oposición a Moción de Sentencia Sumaria.*[11] A grosso modo, alegó que la moción de sentencia sumaria era inmeritoria pues la evidencia presentada demostraba que fue despedida sin justa causa. Además, aseveró que aportó suficiente evidencia para controvertir los hechos que AEELA señaló como incontrovertidos. En cuanto a la reclamación de represalias, ripostó que ésta fue objeto de una acción adversa —el despido— por parte de AEELA luego de incurrir en dos (2) actividades protegidas: 1) prestó testimonio en un caso de un exempleado contra AEELA y dicho testimonio fue alegadamente adverso a la defensa de la apelada; y 2) testificó ante la Directora de Recursos Humanos, la señora Pier Vargas, durante la investigación de la cual fue objeto por alegada conducta de indisciplina. Sostuvo que, aun cuando no estuviese presente el elemento de la proximidad temporal, la jurisprudencia aplicable permite que esta falta se supla con otros factores.

---

[11] Véase, Entradas Núm. 51, 52 y 53 de SUMAC-TPI.

Relacionado a la causa de acción por despido injustificado, rebatió que la prueba que acompañó su oposición a la solicitud de sentencia sumaria estableció que AEELA incumplió con el proceso disciplinario dispuesto en el Manual de Medidas Disciplinarias. Particularmente señala que el señor Pérez Ayala no cumplió con su obligación reglamentaria de traer a la atención de la Directora de Recursos Humanos, dentro de un término razonable, la conducta de la querellante que violaba el Manual de Medidas Disciplinarias. Dado lo anterior, solicitó al foro de instancia que declarase No Ha Lugar la moción de sentencia sumaria.

Luego de las partes haber presentado una *Réplica a Oposición a Solicitud de Sentencia Sumaria*[12] y una *Duplica a Réplica a Oposición a Moción de Sentencia Sumaria*[13], el 3 de julio de 2025, el TPI emitió la *Sentencia* impugnada.[14] A través de dicho dictamen, el foro apelado declaró Ha Lugar la *Solicitud de Sentencia Sumaria* presentada por AEELA. Determinó que no existían controversias de hechos materiales que impidiesen resolver el caso de manera sumaria.

Concluyó que la apelante no logró demostrar que se configuró un caso de represalias, toda vez que no hubo proximidad temporal entre la fecha en la que ésta prestó testimonio y el momento en que ocurrió la acción adversa. Asimismo, resolvió que su despido estuvo justificado porque: 1) no desempeñó un deber mayor de diligencia y competencia; 2) incurrió en un desempeño deficiente, ineficiente e insatisfactorio; 3) y violó las reglas y reglamentos establecidos al incumplir de manera sustancial con los objetivos de su unidad de trabajo. En esa línea, dispuso que el despido fue producto de una justa causa y no se realizó de manera ilegal o caprichosa.

---

[12] Véase, Entrada Núm. 57 de SUMAC-TPI.
[13] Véase, Entrada Núm. 59 de SUMAC-TPI.
[14] Véase, Entrada Núm. 66 de SUMAC-TPI.

Igualmente, formuló las siguientes determinaciones de hechos:

1. La Lcda. Rodríguez Claudio comenzó a trabajar para AEELA, Inc., el 15 de septiembre de 2005, como Abogada II adscrita a la División de Cobro Legal (en adelante "División de Cobro") del Departamento de Asuntos Legales. **Véase Hecho Incontrovertido Núm. 1 de Sentencia Sumaria y aceptado en la Oposición.**

2. La Lcda. Rodríguez Claudio ocupó varios puestos en la Compañía, todos dentro del Departamento de Asuntos Legales:

a. Abogado II desde 15 de septiembre de 2005 hasta el 30 de junio de 2011.

b. Gerente Interina en la División de Contratos y Seguros desde 1 de julio de 2011 hasta el 17 de agosto de 2011.

c. Directora Auxiliar del Departamento de Asuntos Legales desde 18 de agosto de 2011 hasta el 15 de agosto de 2012.

d. Directora Interina del Departamento de Asuntos Legales desde el 18 de agosto de 2011 hasta el 31 de octubre de 2011 y luego desde el 17 de agosto de 2012 hasta el 4 de agosto de 2013.

e. Gerente de la División de Cobro desde el 5 de agosto de 2013 hasta el 26 de mayo de 2022, fecha en que fue despedida. **Véase, Hecho Incontrovertido Núm. 2 de Sentencia Sumaria y aceptado en la Oposición.**

3. El último puesto ocupado por la Lcda. Rodríguez Claudio en AEELA fue de Gerente de Cobro Legal en la División de Cobro Legal adscrita al Departamento de Asuntos Legales, desde el 5 de agosto de 2013 hasta el 26 de mayo de 2022. **Véase, Hecho Incontrovertido Núm. 3 de Sentencia Sumaria y aceptado en la Oposición.**

4. La Lcda. Rodríguez Claudio recibió el Manual de Normas de Conducta y Medidas Disciplinarias para el Personal Gerencial de AEELA. **Véase, Hecho Incontrovertido Núm. 4 de Sentencia Sumaria y aceptado en la Oposición.**

5. El Manual de Normas de Conducta y Medidas Disciplinarias para el Personal Gerencial de AEELA impone a los gerenciales un deber mayor de diligencia y competencia que el de otros empleados que no ocupan posiciones de esa naturaleza:

> todos los empleados gerenciales son responsables de conocer sus funciones y sus responsabilidades dentro del área de trabajo a la cual han sido asignados. Se requiere de éstos un deber mayor de diligencia y competencia que el de otros empleados que no ocupan posiciones de esta naturaleza.

**Véase, Hecho Incontrovertido Núm. 5 de Sentencia Sumaria y aceptado en la Oposición.**

6. La Lcda. Rodríguez Claudio recibió el Reglamento para Personal Gerencial y de Alta Gerencia de AEELA promulgado el 31 de enero de 2014. **Véase, Hecho Incontrovertido Núm. 6 de Sentencia Sumaria y aceptado en la Oposición.**

7. El trabajo de la Lcda. Rodríguez Claudio era "revisado mediante informes, reuniones y resultados obtenidos." **Véase, Hecho Incontrovertido Núm. 7 de Sentencia Sumaria; Exhibit 6, Descripción de Puesto de Gerente de Cobro Legal, pág. 1.**

8. El Reglamento para Personal Gerencial y de Alta Gerencia de AEELA establece "los empleados gerenciales deberán satisfacer los criterios de productividad, eficiencia, orden y disciplina" por lo que parte de sus deberes y obligaciones se encuentran "(c) la eficiencia

y diligencia en la realización de las tareas asignadas a sus puestos y otras compatibles con éstos y con las funciones y objetivos de la Asociación" y "(d) [e]l cumplimiento de aquellas órdenes e instrucciones de sus supervisores, compatibles con la autoridad delegada en esto y con las funciones y objetivos de la Asociación". **Véase, Hecho Incontrovertido Núm. 9 de Sentencia Sumaria y aceptado en la Oposición.**

9. El salario más alto devengado por la Lcda. Rodríguez Claudio mientras trabajó para AEELA fue por la cantidad de seis mil treinta dólares ($6,030.00) mensuales. **Véase, Hecho Incontrovertido Núm. 10 de Sentencia Sumaria; Exhibit 1, Deposición de la Lcda. Rodríguez Claudio, 13 de septiembre de 2023, pág. 29, ln. 6-14.**

10. El 5 de agosto de 2013, la Lcda. Rodríguez Claudio fue nombrada al puesto de Gerente de la División de Cobro Legal. **Véase, Hecho Incontrovertido Núm. 11 de Sentencia Sumaria; Exhibit 1, Deposición de la Lcda. Jeanette Rodríguez Claudio, 13 de septiembre de 2023, pág. 65 ln. 3- 25 hasta pág. 66, ln. 1-7**.

11. La División de Cobro Legal está adscrita al Departamento de Asuntos Legales de AEELA. **Véase, Hecho Incontrovertido Núm. 12 de Sentencia Sumaria y aceptado en la Oposición.**

12. El Director del Departamento de Asuntos Legales, el Lcdo. Pérez Ayala, era el supervisor de la Lcda. Rodríguez Claudio. **Véase, Hecho Incontrovertido Núm. 13 de Sentencia Sumaria y aceptado en la Oposición.**

13. El Manual de Normas de Conducta y Medidas Disciplinarias para el Personal Gerencial de AEELA dispone que:

> En los casos que el supervisor no actúe y a juicio del Director de Recursos Humanos o el Director Ejecutivo se trate de una acción perjudicial o lesiva a los intereses de la Asociación, sus asociados, empleados y/o visitantes, entre otros, podrá ser motivo de una acción disciplinaria. La omisión del supervisor en traer la atención del Departamento de Recursos Humanos una falta, no impide al Director Ejecutivo de la Asociación iniciar o continuar con el procedimiento de imposición de medidas disciplinarias al empleado.

**Véase, Hecho Incontrovertido Núm. 15 de Sentencia Sumaria y aceptado en la Oposición.**

14. La Lcda. Rodríguez Claudio, como Gerente, era la encargada y responsable por todos los trabajos realizados en la División de Cobro Legal de AEELA, y encargada de supervisar a los abogados que trabajaban en dicha División. **Véase, Hecho Incontrovertido Núm. 16 de Sentencia Sumaria y aceptado en la Oposición.**

15. Parte de las funciones del puesto de Gerente de Cobro Legal ocupado por la Lcda. Rodríguez Claudio, estaba: la planificación, coordinación, dirección y supervisión de las tareas de cobro de dinero a deudores de la Compañía mediante vías judiciales o procedimientos administrativos. **Véase, Hecho Incontrovertido Núm. 17 de Sentencia Sumaria y aceptado en la Oposición.**

16. El Departamento de Cobros refería los casos a la División de Cobro Legal, una vez recibidos, la Lcda. Rodríguez Claudio trabajaba la primera gestión de cobro de forma extrajudicial, la cual consistía en el envío de carta de cobros. **Véase, Hecho Incontrovertido Núm. 18 de Sentencia Sumaria y aceptado en la Oposición.**

17. Luego de realizada la reclamación extrajudicial por la Lcda. Rodríguez Claudio, entonces ésta era la responsable y encargada de asignar estos casos a los abogados de la División de Cobro Legal para que continuaran el proceso de cobro por las vías judiciales,

les entregaba las instrucciones y les informaba la fecha límite para que estos terminaran de completar los casos asignados. **Véase, Hecho Incontrovertido Núm. 19 de Sentencia Sumaria y aceptado en la Oposición.**

18. Cuando los abogados de la División de Cobro Legal procedían con la gestión de cobro por la vía judicial, los abogados debían realizar distintas gestiones, tales como: (1) toma de deposición por preguntas escritas; (2) solicitar órdenes del tribunal con el fin de verificar si el deudor tenía alguna cantidad pendiente de liquidarse en la agencia gubernamental para la cual trabajó; (3) búsqueda en el sistema de Karibe (Registro de la Propiedad), (4) solicitudes de órdenes para que el CRIM informara de alguna propiedad inmueble donde se pudiera crear un gravamen y/o (5) investigaciones de campo. **Véase, Hecho Incontrovertido Núm. 20 de Sentencia Sumaria y aceptado en la Oposición.**

19. El cumplimiento de estas gestiones antes mencionadas era necesario para poder recomendar la cuenta como una incobrable. **Véase, Hecho Incontrovertido Núm. 21 de Sentencia Sumaria y aceptado en la Oposición.**

20. La Lcda. Rodríguez Claudio también ejercía funciones de cobros judicialmente, por lo que comparecía como abogada en representación de la Compañía en estos procedimientos y evaluaba los casos para (1) hacer recomendaciones en cuanto a la declaración de cuentas incobrables y (2) autorizar préstamos a deudores morosos. **Véase, Hecho Incontrovertido Núm. 23 de Sentencia Sumaria y aceptado en la Oposición.**

21. Para que la División de Cobro Legal recomiende una cuenta como una incobrable, se debía de haber agotado las gestiones de cobro y de existir alguna justificación para la declaración de cuenta incobrable, se debía de completar un formulario justificando dicha recomendación por el abogado. **Véase, Hecho Incontrovertido Núm. 24 de Sentencia Sumaria y aceptado en la Oposición.**

22. El Reglamento para el Manejo de Cuentas Incobrables de AEELA establece los criterios principales que se utilizan para declarar incobrable una deuda. Estos criterios se resumen en: (1) el deudor carece de bienes para ejecutar, (2) deudor había fallecido sin bienes, (3) impráctico y antieconómico por lo ínfimo de la cuantía; (4) préstamo moroso por más de dos años, (5) deudor no localizado, (6) fuera de la jurisdicción de Puerto Rico, (7) prescripción y (8) transcurrido más de 5 años sin poder ejecutar una sentencia. **Véase, Hecho Incontrovertido Núm. 25 de Sentencia Sumaria y aceptado en la Oposición.**

23. Una vez los abogados de la División de Cobro Legal hicieran el análisis para declarar el caso como incobrable, la Lcda. Rodríguez Claudio evaluaba dicha recomendación y los refería al Comité para la Evaluación de Cuentas Incobrables mediante informes trimestrales. (en adelante "Comité de Cuentas Incobrables") **Véase, Hecho Incontrovertido Núm. 26 de Sentencia Sumaria y aceptado en la Oposición.**

24. Luego de evaluado por el Comité de Cuentas Incobrables, pasan al Director Ejecutivo, quien a su vez lo refiere a la Comisión de Política Fiscal. Evaluado por la Comisión, éstos presentan una recomendación al Comité Ejecutivo para que finalmente el Departamento de Finanzas pueda realizar un ajuste contable en los libros de la compañía. **Véase, Hecho Incontrovertido Núm. 27 de Sentencia Sumaria y aceptado en la Oposición.**

25. Para el 2018, la Lcda. Rodríguez Claudio verificaba que, en los casos entregados por los abogados para proceder a la recomendación de cuenta incobrable, se hubiese cumplido con el requisito de hacer la búsqueda en el sistema Karibe, pues siempre formaba parte del plan de trabajo que la Lcda. Rodríguez Claudio había implementado en la División. **Véase, Hecho Incontrovertido Núm. 28 de Sentencia Sumaria y aceptado en la Oposición.**

26. La Lcda. Rodríguez Claudio estaba encargada de preparar Informes Trimestrales dirigidos al Comité de Cuentas Incobrables sobre los casos que había recomendado como incobrables en el sistema de AEELA. **Véase, Hecho Incontrovertido Núm. 30 de Sentencia Sumaria y aceptado en la Oposición.**

27. El Comité de Cuentas Incobrables no evaluaba la totalidad de los casos recomendados como incobrables por parte de la División de Cobro Legal. **Véase, Hecho Incontrovertido Núm. 31 de Sentencia Sumaria y aceptado en la Oposición.**

28. El Comité de Cuentas Incobrables le requería a la Lcda. Rodríguez Claudio una muestra de los casos recibidos, para ver si de dicha muestra surgía si se cumplían o no con los procedimientos establecidos, y finalmente recomendar al Comité Ejecutivo recomendar incobrable esos casos recibidos por la División de Cobro Legal. **Véase, Hecho Incontrovertido Núm. 32 de Sentencia Sumaria y aceptado en la Oposición.**

29. El 20 de junio de 2018 el Actuario Consultor, Dr. Juan B. Aponte, realizó un análisis del fondo de garantía de préstamos de AEELA y preparó un Informe sobre Análisis de la Situación del Fondo de Garantía de Préstamos Personales de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico. **Véase, Hecho Incontrovertido Núm. 33 de Sentencia Sumaria y aceptado en la Oposición.**

30. El Sr. Aponte recomendó que "los procedimientos para determinar los préstamos incobrables se agilicen y que se adopten medidas para reducir el inventario de préstamos en liquidación." **Véase, Hecho Incontrovertido Núm. 35 de Sentencia Sumaria y aceptado en la Oposición.**

31. En las reuniones es una práctica usual de la Compañía preparar minutas, el propósito de las minutas es para tener constancia de lo sucedido en las reuniones, es decir, que haya un récord de lo que se discutió en la reunión. **Véase, Hecho Incontrovertido Núm. 36 de Sentencia Sumaria y aceptado en la Oposición.**

32. El 30 octubre 2020, se llevó a cabo una reunión con varios directores y empleados de alta gerencia, incluyendo a la Lcda. Rodríguez Claudio. **Véase, Hecho Incontrovertido Núm. 37 de Sentencia Sumaria y aceptado en la Oposición.**

33. En dicha reunión se discutieron las recomendaciones del Sr. Aponte, sobre el impacto que estaba teniendo el fondo de garantía de préstamos de AEELA. **Véase, Hecho Incontrovertido Núm. 38 de Sentencia Sumaria y aceptado en la Oposición.**

34. El 10 de febrero de 2021, la Lcda. Rodríguez Claudio, junto a otros directores de departamentos, prepararon un Informe Conjunto titulado *Análisis Financiero del Fondo de Garantía de Préstamos Personales*, en la que presentaron posibles acciones a seguir con respecto al Fondo de Garantía de Préstamos Personal y las recomendaciones realizadas por el Actuario Consultor, el Sr. Aponte. **Véase, Hecho Incontrovertido Núm. 43 de Sentencia Sumaria y aceptado en la Oposición.**

35. El 12 de febrero de 2021, la Lcda. Blanca Medina le indicó al Lcdo. Pérez Ayala, supervisor directo de la Lcda. Rodríguez Claudio, que era necesario presentar con premura un plan de trabajo de los casos pendientes de Cobro Legal y las recomendaciones correspondientes, para agilizar el proceso de cobro y reducir el inventario de casos acumulados. **Véase, Hecho Incontrovertido Núm. 46 de Sentencia Sumaria y aceptado en la Oposición.**

36. El 19 de abril de 2021, la Lcda. Rodríguez Claudio preparó un Plan de Trabajo titulado "Análisis sobre el fondo de Garantía de Préstamos", para su firma y la de su supervisor Lcdo. Pérez Ayala, cuyo propósito era cumplir con el deseo de agilizar los procesos, incluyendo el referir lo antes posible los casos con sentencias

dictadas para que se declaren incobrables y referirlos a agencias de cobro. **Véase, Hecho Incontrovertido Núm. 49 de Sentencia Sumaria y aceptado en la Oposición.**

37. En el plan de trabajo presentado se planteó que se recomendaran incobrables aquellos casos activos cuyas sentencias tienen cinco (5) años o más, pero que previo a dicha recomendación "en estos casos, se solicitaran los reportes de TransUnion y TLO para enviar una última comunicación. También se verificará si el deudor posee o no algún inmueble inscrito en el Registro de la Propiedad. Si se valida la titularidad de algún inmueble y no posee la designación de Hogar Seguro, dicho expediente se retendrá para intentar anotar el gravamen como consecuencia de la deuda con la Asociación". **Véase, Hecho Incontrovertido Núm. 51 de Sentencia Sumaria y aceptado en la Oposición.**

38. En este plan de trabajo estaba planteado que se continuara haciendo la búsqueda de Karibe cuando se estuviesen recomendando incobrables los casos con sentencias sin ejecutar de cinco (5) años o más. **Véase, Hecho Incontrovertido Núm. 52 de Sentencia Sumaria y aceptado en la Oposición.**

39. El 26 de abril de 2021, el Sr. Pablo Crespo Claudio, Director Ejecutivo de AEELA (en adelante "Director Ejecutivo") le envió una comunicación a la Lcda. Blanca Medina de Garau en la que no aceptó este plan de trabajo por no cumplir con la premura necesaria. **Véase, Hecho Incontrovertido Núm. 53 de Sentencia Sumaria; Exhibit 17, Memorando dirigido a la Lcda. Blanca Medina de Garau por el Sr. Pablo Crespo Claudio, 26 de abril de 2021 pág. 2; véase, también, Hecho Incontrovertido Núm. 55 de Sentencia Sumaria; Exhibit 17, Memorando dirigido a la Lcda. Blanca Medina de Garau firmado por el Sr. Pablo Crespo Claudio, 26 de abril de 2021 pág. 2, párrafo 2.**

40. El Lcdo. Pérez Ayala habló con la Lcda. Rodríguez Claudio para que preparara otro plan, con términos menores a los previamente propuestos. **Véase, Hecho Incontrovertido Núm. 57 de Sentencia Sumaria; Exhibit 9, Deposición del Lcdo. José R. Pérez Ayala, 28 de febrero de 2024, pág. 48 ln. 10-20**.

41. La Lcda. Rodríguez Claudio preparó el plan de trabajo. **Véase, Sentencia Sumaria; Exhibit 9, Deposición del Lcdo. José R. Pérez Ayala, 28 de febrero de 2024, pág. 48 ln. 10-23**.

42. El Lcdo. Pérez Ayala se reunió nuevamente con la Lcda. Rodríguez Claudio para notificarle que el último plan de trabajo fue rechazado, que tenía que hacer algo para que se puedan presentar las demandas en menos tiempo. **Véase, Hecho Incontrovertido Núm. 59 de Sentencia Sumaria y aceptado en la Oposición.**

43. La Lcda. Rodríguez Claudio preparó un nuevo plan con un término para presentar las demandas en un término de tres meses, el cual fue aceptado. **Véase, Hecho Incontrovertido Núm. 61 de Sentencia Sumaria y aceptado en la Oposición.**

44. Para mayo del 2021, la División de Cobro Legal comenzó también a referir los casos a unas agencias de cobro privadas. **Véase, Hecho Incontrovertido Núm. 63 de Sentencia Sumaria y aceptado en la Oposición.**

45. En mayo de 2021, la Lcda. Rodríguez Claudio recibió, verbalmente, del Lcdo. Pérez Ayala unas instrucciones impartidas por la Lcda. Medina en cuanto al manejo de sentencias con cinco años o más. **Véase, Hecho Incontrovertido Núm. 65 de Sentencia Sumaria y aceptado en la Oposición.**

46. El 3 de mayo de 2021, la Lcda. Rodríguez Claudio envió un documento titulado "Plan de Trabajo para la presentación de demandas sobre cobro de dinero y el proceso de ejecución de sentencia hasta la disposición final de los casos" a los abogados de la División de Cobro Legal y División de Servicios Legales. **Véase, Hecho Incontrovertido Núm. 66 de Sentencia Sumaria y aceptado en la Oposición.**

47. El 3 de mayo de 2021, la Lcda. Rodríguez Claudio les explicó a los abogados que el Plan de Trabajo de la División de Cobro Legal tenía como objetivo principal atender y disponer del cúmulo de casos pendientes por presentarse demanda sobre cobro de dinero dentro de los próximos tres (3) meses. **Véase, Hecho Incontrovertido Núm. 67 de Sentencia Sumaria y aceptado en la Oposición.**

48. La Lcda. Rodríguez Claudio impartió instrucciones para una vez se obtenga la sentencia, y el deudor no haya comparecido, se deberá indagar en Karibe y CESCO la existencia de bienes y completará dicho trámite, de ser viable. **Véase, Hecho Incontrovertido Núm. 68 de Sentencia Sumaria y aceptado en la Oposición.**

49. El jueves, 13 de mayo de 2021, se celebró una reunión en las oficinas de AEELA. La Lcda. Rodríguez Claudio no participó. **Véase, Hecho Incontrovertido Núms. 70 y 71de Sentencia Sumaria y aceptados en la Oposición.**

50. Según surge de la Minuta de la reunión del 13 de mayo de 2021, la directriz impartida por el Lcdo. Pérez Ayala implicaba que se debían declarar los casos incobrables independientemente de si se había realizado o no la búsqueda en Karibe. **Véase, Hecho Incontrovertido Núm. 75 de Sentencia Sumaria; Exhibit 16, Continuación de Deposición de la Lcda. Rodríguez Claudio, 27 de septiembre de 2023 pág. 57, ln. 5-25 hasta pág. 58 ln 1-8**.

51. El Lcdo. Pérez Ayala le entregó una copia a la Lcda. Rodríguez Claudio de las instrucciones impartidas el 19 de mayo de 2021. El documento entregado está titulado "Instrucciones y Recomendaciones para Agilizar Procesos de Cobro Legal y Otros Asuntos". **Véase, Hecho Incontrovertido Núm. 78 de Sentencia Sumaria y aceptado en la Oposición.**

52. Una de las instrucciones impartidas fue que "los 506 casos con más de cinco (5) años sin ejecutar la sentencia se trabajarán primero y se enviarán al Comité en o antes de la primera de la semana del mes de agosto de 2021. De no haber verificado que el deudor posea bienes inmuebles o vehículos de motor, dicha gestión la podrán realizar después que se declaren incobrables". **Véase, Hecho Incontrovertido Núm. 80 de Sentencia Sumaria y aceptado en la Oposición.**

53. Conforme a las instrucciones del 13 de mayo de 2021, por el Lcdo. Pérez Ayala, y el 19 de mayo de 2021, por el Director Ejecutivo, los abogados no continuaron realizando la búsqueda en Karibe a los casos con sentencias de un año o más. **Véase, Hecho Incontrovertido Núm. 81 de Sentencia Sumaria y aceptado en la Oposición.**

54. El 28 de mayo de 2021, se llevó a cabo una segunda reunión acerca de las "Instrucciones Impartidas para el Plan de Trabajo Cobro Legal", en dicha reunion estaban presentes los abogados de la División de Cobro Legal y Servicios Legales, la Lcda. Rodríguez Claudio y el Lcdo. Pérez Ayala. **Véase, Hecho Incontrovertido Núm. 82 de Sentencia Sumaria y aceptado en la Oposición.**

55. El Lcdo. Pérez Ayala comenzó la reunión haciendo referencia a la reunión sostenida el 13 de mayo de 2021, habló específicamente de cuáles eran las medidas que había que tomar para agilizar los procesos y que había que cumplir con la radicación de las demandas y la recomendación de casos incobrables, empezando por aquellos casos acumulados en la División de Cobro Legal que tenían sentencia dictada y sin ejecutar de cinco (5) años o más. **Véase, Hecho Incontrovertido Núm. 83 de Sentencia Sumaria y aceptado en la Oposición.**

56. De la Minuta de la reunión celebrada el 28 de mayo de 2021, surge que el Lcdo. Pérez Ayala impartió la siguiente instrucción:

> "Entre las instrucciones impartidas por la administración, están las siguientes; el número

uno, radicar las 640 demandas que tenemos pendientes en el término establecido de 3 meses, el cual ya comenzó en este mes de mayo y culminará a finales del mes de julio. Lo que significa que para finales del mes de julio esas 640 demandas deben estar presentadas y radicadas en los tribunales.

Número dos, presentar un informe de los casos incobrables, no es como se mencionó en la reunión anterior, que todos aquellos casos que tengan sentencia dictada de hace un año o más se iba a declarar incobrable y se recomendaría a la agencia de cobro. **La instrucción es que empezando por todos aquellos casos que tienen sentencia final y firme de 5 años o más, para declararlos incobrables. Es decir que todos los casos que tienen 5 años o más con sentencia dictada se hará la recomendación de incobrable**.

Aquellos casos con sentencia dictada de un año o más, se deberá preparar y presentar un informe de estos para recomendar que se declaren incobrables, si cumplen con los requisitos que están en el Artículo 27 del Reglamento de Cobros. **Se empezarán con los casos con sentencia de 5 años o más. Si no se ha verificado que el deudor tiene bienes inmuebles o vehículo de motor, eso se puede hacer, luego de declararlos incobrables. Se estará recomendando incobrable el caso, para no detenernos en el trámite y así poder cumplir con la instrucción impartida de dar de baja todos esos casos que tienen sentencia de 5 años o más**, y luego se continuará con el proceso de investigación y de gravámenes. Aquellos casos con sentencia dictada de un (1) año o más se comenzarán a trabajar con la ejecución de sentencia, verificando en los sistemas de Karibe para el registro de propiedad inmueble y verificado en el Departamento de Transportación y Obras Públicas si el deudor posee algún vehículo de motor para poder colocarle gravamen."

**Véase, Hecho Incontrovertido Núm. 84 de Sentencia Sumaria; Exhibit 23, Minuta de Reunión sobre Instrucciones Impartidas para el Plan de Trabajo de Cobro Legal, 28 de mayo de 2021 firmada por Lcdo. José R. Pérez Ayala, pág. 1 párrafos 2 y 3, pág. 2 párrafos 1 y 2**.

57. La Lcda. Rodríguez Claudio les indicó a los abogados de la División de Cobro Legal, quienes tenían los casos con sentencias de cinco (5) años o más que prepararan los expedientes de los casos y una lista detallada por cada caso recomendado incobrable y se la entregaran para ella hacer la recomendación de cuenta incobrable. **Véase, Hecho Incontrovertido Núm. 85 de Sentencia Sumaria y aceptado en la Oposición.**

58. Con el fin de cumplir con el Plan de Trabajo y las instrucciones de la Lcda. Medina y el Director Ejecutivo, los abogados trabajaron algunos sábados en particular. **Véase, Hecho Incontrovertido Núm. 86 de Sentencia Sumaria y aceptado en la Oposición.**

59. El 23 de junio de 2021, la Lcda. Rodríguez Claudio le envió un correo electrónico a la Lcda. Cotto en el que le notificó que los casos referidos por ésta, les faltaba la búsqueda de Karibe, y le concedió hasta el 27 de agosto de 2021 para que completaran el trámite. **Véase, Hecho Incontrovertido Núm. 87 de Sentencia Sumaria; Exhibit 24, Correo Electrónico de Lcda. Jeanette Rodríguez Claudio dirigido a Nylsa I. Cotto, del 23 de junio de 2021 a las 4:55pm; Exhibit 16, Continuación de Deposición de la Lcda. Jeanette Rodríguez Claudio, 27 de septiembre de 2023, pág. 110 ln. 7-25 hasta pág. 111 ln. 1-10**.

60. El 23 de junio de 2021, la Lcda. Rodríguez Claudio también le requirió a la Lcda. García Antongiorgi que debía de cumplir con la investigación en Karibe, en los casos que se habían sometido para ser considerados incobrables, por ser sentencias sin ejecutar que fueron dictadas hace más de 5 años. **Véase, Hecho Incontrovertido Núm. 88 de Sentencia Sumaria; Exhibit 25, Correo Electrónico de la Lcda. Rodríguez Claudio a la Lcda. García Antongiorgi del 23 de junio de 2021, a las 4:59 p.m.; Exhibit 16, Cont. Deposición de la Lcda. Rodríguez Claudio, 27 de septiembre de 2023, pág. 119, ln 3-10.**

61. El 25 de junio de 2021, el Lcdo. Pérez Ayala le envió una comunicación escrita a la Lcda. Rodríguez Claudio acerca de las "Medidas Relacionadas con Plan de Trabajo Cobro Legal", en la que le indicó que dicho proceder, en adición a otras situaciones de la responsabilidad de la Lcda. Rodríguez Claudio, "incide de manera considerable en poder cumplir la meta establecida". Le exhortó a que se tomen las medidas necesarias para poder cumplir con el Plan de Trabajo establecido y expuso que:

> "Según dispone el Artículo 27(8) del Reglamento de Cobros, Reglamento 0-11 el que hayan transcurridos más de cinco años sin poder ejecutar una sentencia es uno de los criterios principales para declarar un caso como incobrable. **Por tanto, no debe detenerse ni interrumpirse la declaración o recomendación de incobrable en dichos casos para hacer ahora gestiones adicionales**. La investigación en Karibe en dichos casos debe hacerse, **pero se puede hacer con posterioridad a la recomendación de estos como incobrables**. Por tanto, debe proceder con el trámite correspondiente en estos casos para someterlos al Comité de Cuentas Incobrables.
>
> Relacionado con el asunto anterior, el 23 de junio de 2021, envió una instrucción a la Lcda. Nylsa I. Cotto para que efectuara una búsqueda en el sistema Karibe de todos los casos que se recomendó incobrables para tener sentencia con más de cinco (5) años sin ejecutar, pero que les faltara la investigación en dicho sistema. Para esto, le concedió hasta el 27 de agosto de 2021. Con miras a no interrumpir el plan de trabajo establecido, debe proceder con la recomendación de incobrables en los casos sometidos por la Lcda. Nylsa I. Cotto sin esperar a que ésta efectúe la búsqueda requerida, y darle tiempo adicional para que se lleve a cabo esta gestión. La prioridad en estos momentos es la radicación de demandar y trabajar las recomendaciones de casos incobrables. Es en los casos que se obtenga sentencia luego de comenzado el plan de trabajo en los cuales tan pronto advenga final y firme la sentencia, se debe hacer la investigación en Karibe para proceder con la anotación en el Registro y la investigación para hacer el gravamen en el CESCO."

**Véase, Hecho Incontrovertido Núm. 91 de Sentencia Sumaria y aceptado en la Oposición.**

62. El 30 de junio de 2021, la Lcda. Rodríguez Claudio le envió una comunicación a la Lcda. Cotto y la Lcda. García Antongiorgi, en la que les requirió que entregaran una copia de la certificación de Karibe con relación a los casos con sentencia dictadas y sin ejecutar de cinco (5) años o más. **Véase, Hecho Incontrovertido Núm. 92 de Sentencia Sumaria; Exhibit 28, Comunicación dirigida a Nilsa Cotto sobre Plan de Trabajo de la División de Cobro legal para agilizar procesos, manejo y seguimiento de los casos firmado por Lcda. Jeanette Rodríguez Claudio, 30 de junio de 2021, pág. 2**; véase también, **Hecho Incontrovertido Núm. 93 de Sentencia Sumaria; Exhibit 29, Comunicación dirigida a la Lcda. García Antongiorgi sobre Plan de Trabajo de**

**la División de Cobro legal para agilizar procesos, manejo y seguimiento de los casos firmado por Lcda. Jeanette Rodríguez Claudio, 30 de junio de 2021, pág. 2. Exhibit 16, Continuación de Deposición de la Lcda. Jeanette Rodríguez Claudio, 27 de septiembre de 2023, pág. 128 ln. 6-25 hasta pág. 130 ln 1-12**.

63. El 19 de julio de 2021, la Lcda. Rodríguez Claudio, por tercera ocasión le indicó a la Lcda. Cotto y a la Lcda. García Antongiorgi que, de cada informe de progreso semanal sometido, surgían una cantidad de casos activos con sentencia de cinco (5) años para el periodo de julio a diciembre de 2016 y que surge que queda pendiente que realice la verificación en Karibe. Les indicó que debían realizar la búsqueda en Karibe en dichos casos no más tarde del 27 de agosto de 2021". **Véase, Hecho Incontrovertido Núm. 95 de Sentencia Sumaria; Exhibit 31, Correo Electrónico de Lcda. Jeanette Rodríguez Claudio dirigido a Nylsa Cotto, 19 de julio de 2021 a las 3:19pm, párrafo 2; Exhibit 32, Correo Electrónico de Lcda. Jeanette Rodríguez Claudio dirigido a Lcda. Xait García Antongiorgi, 19 de julio de 2021 a las 3:25pm, párrafo 2**.

64. El 21 de julio de 2021, se llevó a cabo una reunión sobre las Instrucciones Impartidas para el Plan de Trabajo de Cobro Legal. **Véase, Hecho Incontrovertido Núm. 96 de Sentencia Sumaria y aceptado en la Oposición.**

65. En dicha reunión, el Lcdo. Pérez Ayala enfatizó textualmente las instrucciones impartidas por el Director Ejecutivo, y le informó a la Lcda. Rodríguez Claudio y a las demás abogadas presentes la importancia de haber entendido estas instrucciones y "que los casos viejos con sentencias emitidas de cinco años o más serán declarados incobrables inmediatamente y luego un futuro es que realizaran la búsqueda en los sistemas de Karibe y CESCO". **Véase, Hecho Incontrovertido Núm. 97 de Sentencia Sumaria y aceptado en la Oposición.**

66. En julio de 2021, el Lcdo. Antonio Adrover, representante legal de AEELA, reunió a la Lcda. Rodríguez Claudio, y a demás personas nombradas por AEELA como testigos en referencia al juicio del caso *Manuel A. Díaz Rivera v. AEELA*, Civil Núm. K PE2014-1610 por despido injustificado y discrimen por edad. **Véase, Hecho Incontrovertido Núm. 98 de Sentencia Sumaria y aceptado en la Oposición.**

67. En ese caso, el Sr. Manuel A. Díaz Rivera había alegado que, tras ser despedido, AEELA lo sustituyó por la Lcda. Rodríguez Claudio, empleada de menor edad y antigüedad que él, alegando un acto de discriminación en su contra por razón de su edad. **Véase, Hecho Incontrovertido Núm. 99 de Sentencia Sumaria y aceptado en la Oposición.**

68. AEELA nombró y produjo como parte de sus testigos a la Lcda. Rodríguez Claudio en el caso antes mencionado. **Véase, Hecho Incontrovertido Núm. 100 de Sentencia Sumaria y aceptado en la Oposición.**

69. La Compañía le notificó a la Lcda. Rodríguez Claudio de forma escrita, en qué consistía la información que AEELA necesitaba de su testimonio para el juicio del caso de *Manuel Díaz Rivera v. AEELA*, K PE2014-1610, el cual iba a versar estrictamente sobre su trayectoria académica, su preparación profesional y los puestos que ocupó dentro de AEELA hasta ocupar el Puesto de Gerente de Cobro Legal en el 2013. **Véase, Hecho Incontrovertido Núm. 101 de Sentencia Sumaria y aceptado en la Oposición.**

70. A la Lcda. Rodríguez Claudio se le entregó por parte de AEELA el documento de extracto de resumen de su testimonio, según surgía del Informe de Conferencia con Antelación al Juicio, presentado en el caso *Manuel Díaz Rivera v. AEELA*, K PE2014-1610. **Véase, Hecho Incontrovertido Núm. 102 de Sentencia Sumaria y aceptado en la Oposición.**

71. El 13 de agosto de 2021, la Lcda. Rodríguez Claudio fungió como testigo de AEELA en el juicio del caso *Manuel A. Díaz Rivera v. AEELA*, Civil Núm. K PE2014-1610 por despido injustificado y discrimen por edad. **Véase, Hecho Incontrovertido Núm. 103 de Sentencia Sumaria y aceptado en la Oposición.**

72. El 19 de agosto de 2021, la Lcda. Rodríguez Claudio preparó un Informe de Progreso sobre Recomendación Preliminar de Cuenta Incobrable dirigido a la Lcda. Medina. **Véase, Hecho Incontrovertido Núm. 106 de Sentencia Sumaria y aceptado en la Oposición.**

73. En dicho Informe, la Lcda. Rodríguez Claudio solicitó que se aclarara la fecha límite para realizar la búsqueda en Karibe para validar titularidad de los deudores en aquellos casos con sentencias emitidas con más de cinco (5) años o en la alternativa que se les exima de realizar la búsqueda. **Véase, Hecho Incontrovertido Núm. 107 de Sentencia Sumaria y aceptado en la Oposición.**

74. El 1 de septiembre de 2021, se llevó a cabo una reunión de seguimiento sobre el Desarrollo con el Plan de Trabajo de Cobro Legal durante el mes de agosto de 2021, en la que la Lcda. Rodríguez Claudio estuvo presente. **Véase, Hecho Incontrovertido Núm. 113 de Sentencia Sumaria y aceptado en la Oposición.**

75. En esa reunión, el Lcdo. Pérez Ayala, expresó varias preocupaciones como la baja productividad en el mes de agosto y la continuación de la búsqueda en Karibe a pesar de que se habían impartido instrucciones de que se desista de la búsqueda del sistema de Karibe. **Véase, Hecho Incontrovertido Núm. 114 de Sentencia Sumaria; Exhibit 40, Minuta Reunión -Desarrollo con el Plan de trabajo de Cobro Legal durante el mes de agosto 2021, 1 de septiembre de 2021, pág. 1**.

76. En esta reunión el Lcdo. Pérez Ayala, nuevamente enfatizó las instrucciones que en ese momento consistían en no continuar con la búsqueda en sistema de Karibe. **Véase, Hecho Incontrovertido Núm. 115 de Sentencia Sumaria y aceptado en la Oposición.**

77. El 10 de noviembre de 2021, la Lcda. Rodríguez Claudio fue objeto de una amonestación escrita, por haberse ido fuera de su horario de almuerzo. **Véase, Hecho Incontrovertido Núm. 127 de Sentencia Sumaria; Exhibit 45, Amonestación Escrita, 10 de noviembre de 2021, firmado por el Lcdo. José R. Pérez Ayala; Exhibit 16, Continuación de Deposición de la Lcda. Jeanette Rodríguez Claudio, 27 de septiembre de 2023, pág. 196 ln. 2-6.**

78. El 27 de enero de 2022, el Lcdo. Pérez Ayala redactó y refirió a Recursos Humanos un "Informe sobre Progreso de Plan de Trabajo de la División de Cobro Legal y Asuntos Relacionados con la Gerencia y Operación del área por parte de la Lcda. Rodríguez Claudio, Actual Gerente" al Director Ejecutivo de AEELA. **Véase, Hecho Incontrovertido Núm. 130 de Sentencia Sumaria y aceptado en la Oposición.**

79. A raíz de este referido por deficiencias en el desempeño de las funciones de la Lcda. Rodríguez Claudio, la Lcda. Pier A. Vargas Luque (en adelante "Lcda. Vargas"), Directora del Departamento de Recursos Humanos, comenzó un procedimiento interno con el fin de evaluar si correspondía alguna medida disciplinaria contra la Lcda. Rodríguez Claudio. **Véase, Hecho Incontrovertido Núm. 131 de Sentencia Sumaria y aceptado en la Oposición.**

80. Desde el mes de agosto de 2021 hasta febrero del 2022, la Lcda. Rodríguez Claudio no refirió casos a las agencias de cobros. **Véase, Hecho Incontrovertido Núm. 132 de Sentencia Sumaria y aceptado en la Oposición.**

81. La Lcda. Vargas, además de entrevistar a la Lcda. Rodríguez Claudio, también entrevistó a: (1) Lcda. Medina, Ayudante del

Director Ejecutivo; (2) Lcdo. Pérez Ayala, Director de la División de Asuntos Legales y (3) Sr. Eric Collazo, en ese entonces Presidente del Comité de Cuentas Incobrables. **Véase, Hecho Incontrovertido Núm. 133 de Sentencia Sumaria y aceptado en la Oposición.**

82. El 8 de marzo de 2022, la Lcda. Vargas entrevistó al Lcdo. Pérez Ayala, en síntesis, el Lcdo. Pérez Ayala expresó que, a raíz del informe preparado por el Actuario, en el cual señaló que uno de los factores que afectan el fondo de garantía de préstamos de AEELA era el tiempo que demora declarar los casos incobrables, y que el Actuario recomendó agilizar el proceso de cobro y el proceso de declaración de casos incobrables. **Véase, Hecho Incontrovertido Núm. 137 de Sentencia Sumaria; Exhibit 41, Minuta de Entrevista sobre el Referido del Plan de Trabajo de Cobro Legal a el Lcdo. José R. Pérez Ayala, 8 de marzo de 2022; pág. 1.**

83. El 19 de marzo de 2022, la Lcda. Rodríguez Claudio fue reunida por la Lcda. Vargas junto a la Sra. Edith N. Lúgaro Figueroa y el Sr. Aramid Díaz Berríos, como parte del procedimiento disciplinario interno comenzado por su supervisor, el Lcdo. Pérez Ayala. **Véase, Hecho Incontrovertido Núm. 141 de Sentencia Sumaria y aceptado en la Oposición.**

84. El 1 de abril de 2022, la Lcda. Rodríguez Claudio tuvo oportunidad de revisar la minuta acerca de la entrevista sostenida por la Lcda. Vargas. **Véase, Hecho Incontrovertido Núm. 145 de Sentencia Sumaria y aceptado en la Oposición.**

85. El 4 de abril de 2022 la Lcda. Rodríguez Claudio y la Lcda. Vargas sostuvieron una comunicación telefónica, en la que ésta solicitó realizar unas correcciones a la Minuta que se levantó a raíz de su entrevista. **Véase, Hecho Incontrovertido Núm. 146 de Sentencia Sumaria y aceptado en la Oposición.**

86. El 4 de mayo de 2022, el Comité de Cuentas Incobrables emitió un Informe dirigido al Director Ejecutivo del cual surge que se recomendó como incobrables la cantidad de $1,529,710.54 millones de dólares a raíz de cuentas declaradas incobrables por Sentencias sin ejecutar que fueron dictadas hace cinco (5) años o más. **Véase, Hecho Incontrovertido Núm. 147 de Sentencia Sumaria; Exhibit 55, Informe del Comité para la Evaluación de Cuentas Incobrables, 4 de mayo de 2022, pág. 3**.

87. El 23 de mayo de 2022, la Sra. Pier Vargas, redactó un Informe para Acción Disciplinaria de la Lcda. Rodríguez Claudio, dirigido al Director Ejecutivo, Sr. Pablo Crespo. En el mismo recomendó la culminación de empleo por múltiples faltas al Manual de Normas de Conducta y Medidas Disciplinarias Aplicables al Personal Gerencial y de Alta Gerencia. **Véase, Hecho Incontrovertido Núm. 149 de Sentencia Sumaria; Exhibit 48, Informe para Acción Disciplinaria de la Lcda. Jeanette Rodríguez Claudio, Gerente de Cobro Legal, firmado por la Sra. Pier A. Vargas Luque, 23 de mayo de 2022; Exhibit 7, Deposición de la Sra. Pier A. Vargas Luque, 5 de marzo de 2024, pág. 11 ln. 16-25 hasta pág. 12 ln. 1-2.; Exhibit 4, Manual de Conducta**.

88. Las faltas incurridas fueron:
1) B.1.a- Falta de Interés en el Trabajo- incurrir en descuido, negligencia ociosidad, falta de diligencia e interés en el desempeño de sus funciones.
2) B.2- Cometer Errores en el Desempeños de sus Funciones.
3) B.4- Impedir o limitar la producción de Trabajo.
4) F.1.a- Insubordinación, contra un supervisor y/o funcionario o empleado de mayor jerarquía en cualquier de sus modalidades.
5) M.2- Faltas relacionadas con la función de supervisión- Incumplir con las Responsabilidades del Manual de Normas de Conducta.
6) M.6 – Incumplir sustancialmente con los objetos de su unidad de trabajo. **Véase, Hecho Incontrovertido Núm. 150 de Sentencia Sumaria y aceptado en la Oposición.**

89. El 26 de mayo de 2022, la Lcda. Rodríguez Claudio fue despedida. **Véase, Hecho Incontrovertido Núm. 151 de Sentencia Sumaria y aceptado en la Oposición.**

90. El 22 de junio de 2022, el Comité Ejecutivo declaró en pérdida la cantidad de $2,071,634.65 millones de dólares de los cuales $1,529,710.54 millones de dólares fueron a raíz de cuentas declaradas incobrables por sentencias sin ejecutar que fueron dictadas hace cinco (5) años o más. **Véase, Hecho Incontrovertido Núm. 152 de Sentencia Sumaria; Exhibit 59, Acta Núm. 265 del Comité Ejecutivo; Exhibit 55, Informe del Comité para la Evaluación de Cuentas Incobrables, 4 de mayo de 2022, pág. 3**.

91. El cúmulo de sentencias sin ejecutar por parte de la División de Cobro Legal dirigida por la Lcda. Rodríguez Claudio provocó la declaración de pérdida de $1.5 millones de dólares a AEELA. **Véase, Hecho Incontrovertido Núm. 153 de Sentencia Sumaria; Exhibit 57, Declaración Jurada del Sr. Eric Collazo Solá, Director Ejecutivo Interino de AEELA**.

92. Luego del despido de la Lcda. Rodríguez Claudio, el 7 de julio de 2022, el Tribunal de Primera Instancia emitió Sentencia declarando Ha Lugar la Querella presentada por el Sr. Díaz Rivera en el caso Manuel A. Díaz Rivera v. AEELA, Civil Núm. K PE2014-1610, sin embargo, dicha Sentencia fue parcialmente revocada por el Tribunal de Apelaciones. **Véase, Hecho Incontrovertido Núm. 154 de Sentencia Sumaria; Díaz Rivera v. AEELA, KLAN202200590 consolidado con KLCE202201135, Sentencia del 10 de abril de 2023 en la pág. 8.**

93. El 10 de abril de 2023, el Tribunal de Apelaciones en el caso Manuel Díaz v. AEELA, KLAN202200590 consolidado con KLCE202201135, revocó parcialmente la Sentencia del Tribunal de Primera Instancia, declarando No Ha Lugar a la causa de acción de discrimen por edad y sexo, y determinando expresamente, en cuanto al testimonio vertido por la Lcda. Rodríguez Claudio, que:

> "la sustitución del Querellante por la licenciada Jeanette Rodríguez Claudio parece ser un asunto incidental al examinarse en el contexto en que se suscitaron los hechos de este caso. Por lo cual, evidentemente el TPI, erró al entender que procedía conceder la referida causa a base de ese aspecto".

**Véase, Hecho Incontrovertido Núms. 155-157 de Sentencia Sumaria; *Miguel Díaz v. AEELA*, KLAN202200590, Sentencia del 10 de abril de 2023 en la pág. 35.**

94. Esta Sentencia es final y firme. **Exhibit 60, Resolución del TSPR de 9 de junio de 2023.**[15]

No conteste, el 18 de julio de 2025, la apelante presentó una *Solicitud de Determinaciones de Hechos Adicionales y Moción De Reconsideración al Amparo de las Reglas 43 y 47 de las de Procedimiento Civil.*[16] Peticionó al TPI que enmendase las determinaciones de hechos de la *Sentencia,* y que reconsiderase el aludido dictamen a los fines de denegar la solicitud de sentencia sumaria de la apelada y que dictase sentencia sumaria parcial con relación a la causa de acción de despido injustificado a favor de la

---

[15] *Íd.*
[16] Véase, Entrada Núm. 67 de SUMAC-TPI.

señora Rodríguez Claudio. El 11 de agosto de 2025, el foro de instancia emitió una *Resolución* a través de la cual declaró No Ha Lugar la discutida solicitud de reconsideración.[17]

Inconforme, el 9 de septiembre de 2025, la apelante presentó el recurso de apelación[18] que nos ocupa, mediante el cual le imputó al TPI la comisión de los siguientes errores:

> El TPI incurrió en un claro y manifiesto error y/o abusó de su discreción al dictar sentencia sumaria desestimando la Querella porque al realizar el ejercicio sumario, a) admitió ciertos hechos que fueron expresamente controvertidos por la parte querellante en la Oposición a la Moción de Sentencia Sumaria que impedían que se dictara sentencia sumaria; b) en lugar de determinar que existía controversia sobre hechos materiales dirimió credibilidad a favor de la parte promovente de la moción de sentencia sumaria lo que es impermisible. Rosado Reyes v. Global Healthcare Group, 2020TSPR136; Mgmt. Adm. Servs. Corp. v. ELA, 152 DPR 599, 610 (2000); y c) sin ofrecer explicación alguna, el TPI no adoptó ni siquiera uno de los CINCUENTA Y OCHO hechos adicionales no controvertidos incluidos en la Oposición a la Moción de Sentencia Sumaria [Ent.# 51] que establecen, inter alia, según admitió la propia Directora de Recursos Humanos, Pier Vargas, que AEELA incumplió su propio Manual de Normas de Conducta y Medidas Disciplinarias en el procedimiento disciplinario instituido contra la querellante.

> Erró el TPI e incurrió en abuso de discreción al declarar No Ha Lugar a la Solicitud de Determinaciones de Hechos Adicionales y al negarse a considerar los hechos adicionales no controvertidos incluidos en la Oposición a la Moción de Sentencia Sumaria por cuantos dichos hechos adicionales establecen que procedía dictar sentencia sumaría a favor de la querellante con respecto a la causa de acción por despido injustificado ya que la apelante fue despedida sin justa causa porque AEELA incumplió las normas que establece el Manual de Normas de Conducta y Medidas Disciplinarias. Santiago v. Kodak Caribbean, 129 D.P.R. 763, 776 (1992).

El 8 de octubre de 2025, AEELA presentó su *Alegato en Oposición a Apelación*.[19] Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

## II. Derecho Aplicable

### A. La Sentencia Sumaria

El Tribunal Supremo de Puerto Rico ha definido la Moción de Sentencia Sumaria como "un mecanismo procesal que nuestro ordenamiento jurídico provee para la solución rápida, justa y económica de los pleitos en los cuales es innecesario celebrar un

---

[17] Véase, Entrada Núm. 70 de SUMAC-TPI.
[18] Véase, Entrada Núm. 1 de SUMAC-TA.
[19] Véase, Entrada Núm. 3 de SUMAC-TA.

juicio plenario".[20] La Regla 36 de Procedimiento Civil regula esta moción, así como sus requisitos de forma y su oposición.[21] Procede su utilización cuando no existen hechos materiales en controversia, de modo que solo resta aplicar el derecho correspondiente.[22]

Es decir, solo procede dictar sentencia sumaria cuando surge de manera diáfana que la parte promovida por el recurso no puede prevalecer, dado que el tribunal cuenta con la verdad de todos los hechos necesarios para disponer de la controversia.[23] Nuestro más alto Foro ha establecido que un hecho material es "aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable".[24]

No obstante, el tribunal no podrá dictar sentencia sumaria cuando: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los documentos que acompañan la moción una controversia real sobre algún hecho material y esencial; o 4) no procede dictar sentencia sumaria como cuestión de derecho.[25] En ese sentido, la parte que promueve este mecanismo procesal deberá incluir en su moción: 1) una exposición breve de las alegaciones de las partes; 2) los asuntos litigiosos en controversia; 3) la causa de acción sobre la cual se solicita el remedio; 4) una relación concisa y organizada en párrafos enumerados de todos los hechos pertinentes y esenciales sobre los cuales no hay controversia sustancial, con referencia a los párrafos o páginas de las declaraciones juradas o

---

[20] *Oriental Bank v. Caballero García*, 212 DPR 671, 678 (2023); *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 109 (2015).

[21] *CSM v. ELA,* 216 DPR __ (2025); 2025 TSPR 78; *Cruz, López v. Casa Bella y otros*, 213 DPR 980, 993 (2024).

[22] *CSM v. ELA, supra*; *Cruz, López v. Casa Bella y otros, supra*, pág. 993; *Oriental Bank v. Caballero García, supra*, pág. 678; *Meléndez González et al. v. M. Cuebas, supra*, pág. 109.

[23] *Oriental Bank v. Caballero García, supra*, pág. 679.

[24] *Cruz, López v. Casa Bella y otros, supra*; *Oriental Bank v. Caballero García, supra*, pág. 679; *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).

[25] *S.L.G. Szendrey-Ramos v. Consejo Titulares,* 184 DPR 133, 167 (2011).

prueba admisible en evidencia que lo sostienen; 5) el derecho aplicable; y 6) el remedio que solicita.[26]

En consonancia, la parte promovida deberá enumerar los hechos materiales controvertidos y aquellos sobre los cuales no hay controversia.[27] Además, deberá señalar los párrafos o páginas de la prueba que impugne cada hecho.[28] La parte que se opone a una moción de sentencia sumaria, "no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones que consigne en su alegación".[29] Debe refutar la moción de sentencia sumaria de una forma tan detallada y específica, así como lo hizo el promovente en su solicitud.[30] En adición, el Tribunal Supremo ha resuelto que:

> la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión.[31]

Una vez sometida la moción de sentencia sumaria y su oposición, el tribunal deberá analizar los documentos que acompañan la moción de sentencia sumaria, los documentos que acompañan la oposición a tal moción, y aquellos que obren en el expediente.[32] Asimismo, determinará si la parte promovida controvirtió algún hecho material o si hay alegaciones que no han sido refutadas por la prueba.[33]

Ahora bien, este Foro revisor se encuentra en la misma posición que el TPI al momento de revisar una solicitud de sentencia sumaria.[34] Es por ello que, al examinar la determinación del foro recurrido, el Tribunal de Apelaciones está limitado de varias formas,

---

[26] Regla 36.3(a) de Procedimiento Civil de 2009 (32 LPRA Ap. V, R. 36.3(a)); *Oriental Bank v. Caballero García, supra*, pág. 679.

[27] Regla 36.3(b) de Procedimiento Civil de 2009 (32 LPRA Ap. V, R. 36.3(b)); *Oriental Bank v. Caballero García, supra*, pág. 680.

[28] *Íd.*

[29] *Oriental Bank v. Caballero García, supra*, pág. 680.

[30] *Íd.*

[31] *León Torres v. Rivera Lebrón*, 204 DPR 20, 54 (2020).

[32] *Abrams Rivera v. E.L.A.*, 178 DPR 914, 933 (2010).

[33] *Íd.*

[34] *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020); *Meléndez González et al. v. M. Cuebas, supra*, pág. 118.

a saber: 1) sólo puede considerar la prueba presentada ante el foro de instancia; y 2) solo puede determinar si existe o no alguna controversia de hechos materiales, y si el derecho fue aplicado correctamente.[35] Vale destacar que este Foro intermedio no puede adjudicar hechos materiales en disputa, toda vez que esa tarea le corresponde al TPI.[36]

En armonía con lo antes expuesto, el Tribunal Supremo ha puntualizado los pasos a seguir por el Tribunal de Apelaciones cuando le corresponda evaluar una sentencia sumaria:

> *Primero*, reafirmamos lo que establecimos en *Vera v. Dr. Bravo*, [*supra*], a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en cuanto a que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es *de novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
>
> *Segundo*, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*, y discutidos en *SLG Zapata-Rivera v. J.F. Montalvo*, [*supra*].
>
> *Tercero*, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, *el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos.* Esta determinación se puede hacer en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.
>
> *Cuarto*, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[37]

### B. Ley de Represalias

La *Ley contra el Despido Injusto o Represalias a todo Empleado por Ofrecer Testimonio ante un Foro Legislativo, Administrativo o*

---

[35] *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004).
[36] *Íd.*, pág. 335.
[37] (Bastardillas en el original). *Meléndez González et al. v. M. Cuebas, supra*, págs. 118-119.

*Judicial*, fue aprobada a los fines de proteger a los trabajadores de posibles represalias por parte de sus patronos, motivadas por el ofrecimiento de algún testimonio o información ante ciertos foros.[38] Específicamente, el Artículo 2 preceptúa en su inciso (a) lo siguiente:

> (a) Ningún patrono podrá despedir, amenazar o discriminar contra un empleado con relación a los términos, condiciones, compensación, ubicación, beneficios o privilegios del empleo porque el empleado ofrezca o intente ofrecer, verbalmente o por escrito, cualquier testimonio, expresión o información ante un foro legislativo, administrativo o judicial en Puerto Rico, así como el testimonio, expresión o información que ofrezca o intente ofrecer, verbalmente o por escrito, en los procedimientos internos establecidos de la empresa, o ante cualquier empleado o representante en una posición de autoridad, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada establecida por ley.[39]

En lo que nos atañe, este cuerpo estatutario prescribe dos (2) vías para que los obreros puedan establecer una causa de acción por represalias. A través de la primera vía, el empleado debe mostrar evidencia directa o circunstancial para probar una violación de la ley.[40] Mediante la segunda vía, se configura un esquema tripartita probatorio en el que el asalariado, en primera instancia, puede establecer un caso *prima facie* de represalias si demuestra haber participado en una actividad protegida y que fue subsiguientemente despedido, amenazado o discriminado.[41] Luego, una vez el obrero haya establecido su caso *prima facie* de represalias, el peso de la prueba se mueve hacia el patrono, quien debe alegar y fundamentar una razón legítima y no discriminatoria para la acción adversa.[42] Si el patrono cumple con lo antes establecido, el peso de la prueba se mueve nuevamente hacia el empleado, quien entonces debe demostrar que la razón alegada por el patrono es un mero pretexto para la acción adversa.[43]

---

[38] *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 668-669 (2017).
[39] Art. 2(a) de la Ley Núm. 115 de 20 de diciembre de 1991 (29 LPRA sec. 194b).
[40] 29 LPRA sec. 194b; *Velázquez Ortiz v. Mun. de Humacao, supra*, pág. 670.
[41] Art. 2(c) de la Ley Núm. 115 de 20 de diciembre de 1991, *supra*; *Velázquez Ortiz v. Mun. de Humacao, supra*, pág. 670-671.
[42] 29 LPRA sec. 194b; *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 362 (2009).
[43] 29 LPRA sec. 194b; *S.L.G. Rivera Carrasquillo v. A.A.A.*, *supra*.

Con respecto a la segunda vía precedentemente discutida, se considera una actividad protegida bajo esta Ley ofrecer testimonio o información ante cualquier tipo de foro.[44] Además, el Tribunal Supremo de Puerto Rico ha establecido que debe haber un nexo causal entre la actividad protegida realizada por el empleado y la acción adversa, así como también haya una proximidad temporal cercana entre una y la otra.[45] Dicho de otro modo, que se haya tomado una acción adversa en contra de un empleado inmediatamente después de que éste incurriese en una actividad protegida es prueba indirecta suficiente de la existencia de un nexo causal entre ambos acontecimientos.[46]

La norma establecida bajo el tema en cuestión, requiere que el obrero demuestre mediante evidencia elementos adicionales a los aludidos anteriormente, a saber: 1) que fue tratado de forma distinta a otros empleados; 2) que existió un patrón de conducta antagónica contra éste; 3) que las razones ofrecidas por el patrono para justificar la acción adversa están plagadas de incongruencias; o 4) cualquier otra evidencia que obre en el expediente para establecer el nexo causal.[47]

### C. Ley Sobre Despidos Injustificados

La *Ley Sobre Despidos Injustificados* fue creada a los fines de proteger el derecho de los obreros puertorriqueños a la tenencia de sus empleos, de una manera más efectiva.[48] Adicionalmente, busca desalentar los despidos injustificados, así como también ofrece a los obreros remedios justicieros y consustanciales con los daños causados por dichos despidos.[49] El Tribunal Supremo de Puerto Rico ha pronunciado que la referida Ley tiene un propósito social y

---

[44] 29 LPRA sec. 194b.
[45] *Feliciano Martes v. Sheraton*, 182 DPR 368, 397-398 (2011).
[46] *Íd.*, pág. 398.
[47] *Íd.*
[48] Exposición de Motivos de la Ley Núm. 80 de 30 de mayo de 1976, *supra.*
[49] Exposición de Motivos de la Ley Núm. 80 de 30 de mayo de 1976, *supra*; Véase, también, *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 770-771 (2022).

coercitivo, pues sanciona que un patrono despida a su empleado, a menos que demuestre una justa causa para ello.[50] En atención a su propósito reparador, esta Ley siempre debe ser interpretada de manera liberal y favorable al empleado.[51]

En ese aspecto, el Artículo 1 de la *Ley Sobre Despidos Injustificados* dispone que todo empleado que trabaja para un patrono mediante remuneración, contratado sin tiempo determinado, que sea despedido sin que medie justa causa, tendrá derecho a recibir por parte de su patrono una indemnización, conocida comúnmente como "la mesada".[52]

Como norma general, esta Ley no favorece el despido como sanción a la primera falta.[53] No obstante, esta norma no es absoluta. Nuestro más alto Foro ha resuelto que la alternativa de despedir a un empleado que haya cometido una sola falta no está vedada en su totalidad.[54] Para ello, la falta que abra paso al despido "tiene que ser de tal seriedad o naturaleza, tan grave, tan lesiva a la paz y al buen orden de la empresa, que resulte imprudente tener que esperar su reiteración para destituir al empleado".[55]

A tono con lo discutido, Artículo 2 del estatuto en cuestión delimita aquellas instancias que constituyen "justa causa" para el despido. Particularmente, se entiende por justa causa para el despido de un empleado, aquella que no esté motivada por razones legalmente prohibidas y que no sea el producto del capricho del patrono.[56] También se entiende por justa causa aquellas razones que incidan sobre el buen y normal funcionamiento de un establecimiento, las cuales incluyen:

---

[50] *Jusino et als. v. Walgreens*, 155 DPR 560, 571 (2001).
[51] *Íd.*
[52] Art. 1 de la Ley Núm. 80 de 30 de mayo de 1976 (29 LPRA sec. 185a); *Ortiz Ortiz v. Medtronic, supra*, pág. 771; *León Torres v. Rivera Lebrón, supra*, pág. 36.
[53] *Jusino et als. v. Walgreens, supra*, pág. 573.
[54] *Íd.*
[55] *Íd.*
[56] Art. 2 de la Ley Núm. 80 de 30 de mayo de 1976 (29 LPRA sec. 185b).

(a) Que el empleado incurra en un patrón de conducta impropia o desordenada.

(b) Que el empleado incurra en un patrón de desempeño deficiente, ineficiente, insatisfactorio, pobre, tardío o negligente. Esto incluye incumplir con normas y estándares de calidad y seguridad del patrono, baja productividad, falta de competencia o habilidad para realizar el trabajo a niveles razonables requeridos por el patrono y quejas repetidas de los clientes del patrono.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidos para el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de reorganización, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido o con el propósito de aumentar la competitividad o productividad del establecimiento.[57]

Ahora, las aludidas circunstancias no conforman una lista taxativa, por lo que los tribunales están obligados a evaluar situaciones que no están expresamente contenidas en el precitado cuerpo estatutario para determinar si hubo o no justa causa para el despido de un obrero.[58] De esta forma, la *Ley Sobre Despidos Injustificados* "no pretende ni puede ser un código de conducta conteniendo una lista de faltas claramente definidas y la sanción que corresponde a cada una y en cada instancia, si ha de ser reprimenda, suspensión o despido".[59] Lo anterior, es una opción del patrono que puede adoptar los reglamentos razonables que entienda necesarios para el buen funcionamiento de la empresa.[60]

Así, para que exista "justa causa" para un despido, el patrono tiene que demostrar: 1) que las normas establecidas para el funcionamiento de la empresa son razonables; 2) que proveyó una

---

[57] *Íd.*
[58] *Jusino et als. v. Walgreens, supra*, pág. 572.
[59] *Íd.*, pág. 573.
[60] *Íd.*

copia escrita de las referidas normas al empleado; 3) que el obrero las violó en reiteradas ocasiones; y 4) que el despido no se haya realizado por mero capricho del patrono o sin una razón relacionada al buen y normal funcionamiento del establecimiento.[61] En ese contexto, el principio rector que regula el despido por justa causa estatuido en el Artículo 2 de la *Ley Sobre Despidos Injustificados* es aquel que precisa las circunstancias en el que este se produce.[62]

### III. Aplicación del Derecho a los Hechos

Antes de proceder a discutir los errores señalados por la parte apelante, colegimos que la *Solicitud de Sentencia Sumaria* y la *Oposición a Moción de Sentencia Sumaria* cumplen con los requisitos de forma prescritos por la Regla 36.3 de Procedimiento Civil.

Ahora bien, como primer señalamiento de error, la señora Rodríguez Claudio alegó, en esencia, que el TPI incidió al dictar sentencia sumaria: 1) puesto que admitió como ciertos varios hechos que fueron controvertidos por ésta; y 2) por no haber incluido en la *Sentencia* los hechos que la parte apelante propuso como incontrovertidos. No le asiste la razón. Luego de un análisis sosegado de la prueba presentada por las partes de epígrafe para sostener los hechos incontrovertidos y los hechos impugnados en sus respectivas mociones, coincidimos con el TPI al determinar que no existen controversias de hechos materiales que impidan disponer del caso de manera sumaria. En ese sentido, adoptamos por referencia cada una de las Determinaciones de Hechos formuladas por el foro de instancia y las hacemos formar parte de esta *Sentencia*.

Ahora, nos atañe dirimir si el foro apelado aplicó correctamente el Derecho a la controversia de este caso. Como

---

[61] *Feliciano Martes v. Sheraton, supra*, págs. 381-382; *Jusino et als. v. Walgreens, supra*, pág. 573.
[62] *Srio. del Trabajo v. G.P. Inds., Inc.,* 153 DPR 223, 244 (2001).

segundo señalamiento de error, la parte apelante argumentó que el TPI incidió al declarar No Ha Lugar su solicitud de reconsideración y de determinaciones de hechos adicionales, pues procedía dictar sentencia sumaria parcial a su favor con respecto a la causa de acción por despido injustificado. Particularmente, sostuvo que su despido fue injustificado porque AEELA incumplió, presuntamente, con lo dispuesto en el Manual de Medidas Disciplinarias. Para propósitos de resolver el presente recurso conforme al estado de derecho vigente en materia de Sentencia Sumaria, analizaremos primeramente la aplicación realizada por el foro apelado sobre la Ley de Represalias. Luego, procederemos a examinar la aplicación realizada por el TPI sobre la Ley de Despido Injustificado. Adelantamos que no nos convence el argumento esgrimido por la parte apelante en su segundo señalamiento de error.

Según ya dijimos, un obrero tiene dos (2) vías para establecer un caso de represalias. En lo que nos atañe al caso del título, mediante la segunda vía las partes deben cumplir con un esquema probatorio tripartita. Primero, el empleado debe establecer un caso *prima facie* de represalias en el que demuestre que participó de una actividad protegida, y que inmediatamente después sufrió una acción adversa por parte del patrono. Segundo, el patrono debe demostrar que la acción adversa estuvo fundamentada en una razón legítima y no discriminatoria. Tercero, el obrero entonces debe demostrar que la razón ofrecida por el patrono es un mero pretexto para la acción adversa. A lo anterior se suma que debe haber un nexo causal entre la actividad protegida y la acción adversa. Además, se requiere que haya una proximidad temporal cercana entre un elemento y el otro.

Se desprende del expediente ante nos que la señora Rodríguez Claudio prestó testimonio en el caso *Manuel Díaz Rivera v. AEELA*[63] el 13 de agosto de 2021, lo cual implica que participó de una actividad protegida.[64] No obstante, su despido, lo que constituiría la acción adversa luego de realizar la actividad protegida, ocurrió el 26 de mayo de 2022.[65] Por lo tanto, la apelante no logró configurar un caso de represalias, en la medida en que no demostró la existencia de una proximidad temporal cercana entre el testimonio ofrecido y su despido. Examinado el expediente, apreciamos que el hecho de que la apelante haya testificado en el mencionado caso ocurrió de manera incidental o paralela a las circunstancias que motivaron su despido. Así pues, resulta forzoso concluir que el foro de instancia aplicó de manera correcta la Ley de Represalias y su jurisprudencia interpretativa.

Ahora nos concierne determinar si el TPI aplicó la Ley de Despidos Injustificados de manera correcta.

Como se sabe, se considera justa causa para el despido de un obrero aquella que no esté motivada por razones legalmente prohibidas y que no sea el producto del capricho del patrono. Se añade a la definición de justa causa aquellas razones que afecten el funcionamiento de un establecimiento. A esos efectos, la Ley de Despidos Injustificados provee una lista no taxativa de esas razones, tales como: 1) que haya un patrón de conducta impropia por parte del asalariado; 2) que haya un desempeño, entre otros, deficiente, insatisfactorio o negligente por parte del obrero; 3) que el empleado viole de manera reiterada las reglas del establecimiento, siempre que se le haya entregado oportunamente una copia escrita; 4) el cierre total o parcial del establecimiento; 5) que surja una reorganización

---

[63] Caso Núm. KPE2014-1610.
[64] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 1, Parte 2, págs. 64-65; Entrada Núm. 66 de SUMAC-TPI, Determinación de Hecho Núm. 71, pág. 19.
[65] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 58; Entrada Núm. 66 de SUMAC-TPI, Determinación de Hecho Núm. 89, pág. 23.

en el lugar de empleo; o 6) que se suscite una reducción en las labores del empleo.

Según mencionado, estas razones no son una camisa de fuerza. En ese sentido, los tribunales tienen el deber de evaluar situaciones que no están expresamente contenidas en el párrafo que precede para concluir si hubo o no justa causa para el despido de un empleado. En fin, para que se configure la causa justificada en un despido, el patrono tiene que demostrar: 1) que las normas establecidas para el funcionamiento de la empresa son razonables; 2) que proveyó una copia escrita de las referidas normas al empleado; 3) que el obrero las violó en reiteradas ocasiones; y 4) que el despido no se haya realizado por mero capricho del patrono o sin una razón relacionada al buen y normal funcionamiento del establecimiento. Cabe destacar que el principio rector que regula el despido por justa causa bajo la materia en cuestión, es aquel que define las circunstancias en el que se produce el aludido despido.

Surge del legajo apelativo que para el año 2018, el Actuario Consultor, el Dr. Juan B. Aponte, realizó un análisis del fondo de garantía de préstamos de AEELA y preparó un Informe sobre Análisis de la Situación del Fondo de Garantía de Préstamos Personales de la Asociación de Empleados del Estado Libre Asociado de Puerto Rico.[66] El Actuario Consultor recomendó en el referido informe que "los procedimientos para determinar los préstamos incobrables se agilicen y que se adopten medidas para reducir el inventario de préstamos en liquidación".[67] Posteriormente, para febrero de 2021, la Licenciada Blanca Medina expresó al Licenciado Pérez Ayala, supervisor inmediato de la apelante, la necesidad de presentar a la mayor brevedad posible un plan de trabajo para los

---

[66] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 11; Entrada Núm. 66 de SUMAC-TPI, Determinación de Hecho Núm. 29, pág. 11.
[67] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 11, parte 4, pág. 49; Entrada Núm. 66 de SUMAC-TPI, Determinación de Hecho Núm. 30, pág. 11.

casos pendientes del área de Cobro Legal junto con unas recomendaciones, a los fines de agilizar los procesos y reducir el volumen de trabajo.[68]

Durante los meses subsiguientes, la señora Rodríguez Claudio preparó dos (2) planes de trabajo, los cuales fueron rechazados y devueltos dado que el término recomendado para presentar las demandas no cumplía con la premura requerida.[69] Ante este escenario, la apelante preparó un tercer plan de trabajo a través del cual recomendó que se presentasen dichas demandas dentro de un término de tres (3) meses y el cual fue aceptado.[70] En resumen, luego de presentado el último plan de trabajo, se llevaron a cabo varias reuniones, en una de las cuales no participó la señora Rodríguez Claudio, y se impartieron unas instrucciones a la apelante y al personal de la DCL.[71] Particularmente, se les indicó, entre otras cosas, que procedieran a recomendar como incobrables aquellos casos con cinco (5) años o más de haberse emitido la sentencia, y **posponer** para esos casos la búsqueda en Karibe de bienes inmuebles de los socios deudores y las correspondientes solicitudes de certificaciones registrales, *luego* **de recomendar dichas cuentas como incobrables.[72]** Es decir, se le pidió que omitiera la aludida búsqueda en Karibe *antes* de declarar esas cuentas como incobrables, toda vez que retrasaban la agilidad requerida para culminar con los casos.

Sin embargo, la apelante continuó requiriéndole a sus supervisados que realizaran la búsqueda en el sistema operativo de

---

[68] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 13; Entrada Núm. 66 de SUMAC-TPI, Determinación de Hecho Núm. 35, págs. 11-12.

[69] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 1, págs. 252-253; Exhibit 9, págs. 48 y 51; 15, pág. 2; Exhibit 16, págs. 14-16; 17, pág. 2; Entrada Núm. 66 de SUMAC-TPI, Determinaciones de Hechos Núms. 36-42, págs. 12-13.

[70] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 9, págs. 58-59; Entrada Núm. 66 de SUMAC-TPI, Determinación de Hecho Núm. 43, pág. 13.

[71] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 1, págs. 243-244; Exhibit 16, págs. 17-18, 40-43, 57-58, 89, 95, 97; Exhibit 19, págs. 1 y 6; Exhibit 20; Exhibit 21, pág. 3; Exhibit 22; Exhibit 23, págs. 1-2; Entrada Núm. 66 de SUMAC-TPI, Determinaciones de Hechos Núms. 44-56, págs. 13-16.

[72] *Íd.*

Karibe.[73] A raíz de ello, el Licenciado Pérez Ayala se comunicó por escrito con la apelante y le expresó que este proceder incidía considerablemente en el cumplimiento de los objetivos establecidos.[74] No obstante, la apelante solicitó a sus supervisados nuevamente la investigación en la base de datos de Karibe.[75] Así las cosas, en noviembre de 2021, la apelante fue amonestada por escrito por haber tomado el almuerzo fuera de su horario.[76] Además, durante los meses de agosto de 2021 a febrero de 2022, la señora Rodríguez Claudio no hizo referido de casos a las agencias de cobro.[77] En enero de 2022, el Licenciado Pérez Ayala refirió a Recursos Humanos un "Informe sobre Progreso de Plan de Trabajo de la División de Cobro Legal y Asuntos Relacionados con la Gerencia y Operación del área por parte de la Lcda. Rodríguez Claudio, Actual Gerente" al Director Ejecutivo de AEELA.[78]

El procedimiento interno realizado por Recursos Humanos resultó en el despido de la apelante el 26 de mayo de 2022.[79] En su carta de despido, le fueron imputadas las siguientes violaciones al Manual de Medidas Disciplinarias como fundamento: B.1.a – Falta de interés en el Trabajo – incurrir en descuido, negligencia, ociosidad, falta de diligencia e interés en el desempeño de sus funciones; B.2 – Cometer errores en el desempeño de sus funciones; B.4 – Impedir o limitar la producción de trabajo; F.1.a –

---

[73] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 16, págs. 104-105, 108-111 y 119; Exhibit 23, págs. 4-5; Exhibit 24; Exhibit 25; Entrada Núm. 66 de SUMAC-TPI, Determinaciones de Hechos Núms. 57-60, pág. 16.

[74] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 16, págs. 123-124; Exhibit 26, parte 3, pág. 15; Exhibit 27, págs. 2-3; Entrada Núm. 66 de SUMAC-TPI, Determinación de Hecho Núm. 61, págs. 16-17.

[75] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 16, págs. 128-130; Exhibit 28; Exhibit 29; Entrada Núm. 66 de SUMAC-TPI, Determinaciones de Hechos Núm. 62-63, págs. 17-18.

[76] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 16, pág. 196; Exhibit 45; Entrada Núm. 66 de SUMAC-TPI, Determinación de Hecho Núm. 77, pág. 20.

[77] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 42, pág. 3; Entrada Núm. 66 de SUMAC-TPI, Determinación de Hecho Núm. 80, pág. 21.

[78] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 1, pág. 92; Exhibit 9, pág. 95; Exhibit 47; Entrada Núm. 66 de SUMAC-TPI, Determinación de Hecho Núm. 78, pág. 20.

[79] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 58; Entrada Núm. 66 de SUMAC-TPI, Determinación de Hecho Núm. 89, pág. 23.

Insubordinación contra un supervisor y/o funcionario o empleado de mayor jerarquía, en cualquiera de sus modalidades; M.2 – Faltas relacionadas con la función de supervisión, incumplir con las responsabilidades del Manual de Medidas Disciplinarias; M.6 – Incumplir sustancialmente con los objetivos de su unidad de trabajo.[80] De las seis (6) faltas imputadas, el Manual de Medidas Disciplinarias contempla el despido desde la primera falta en cuatro (4) de ellas.[81]

Dicho Manual dispone que en aquellas situaciones que ameriten una suspensión o despido, el supervisor inmediato del obrero deberá notificar el evento al Director de Recursos Humanos dentro de un término razonable.[82] De la misma manera, este cuerpo reglamentario reconoce la facultad que tiene un supervisor inmediato para apercibir al empleado de forma verbal.[83] Ahora bien, el manual no contempla que se tenga por caducada aquella conducta que amerite imputarse como falta, que no fue referida dentro de un término razonable ante el Director de Recursos Humanos.[84]

Ante todo lo anterior, justipreciamos que tampoco estamos ante un caso de despido injustificado. Primero, debemos señalar que no advertimos que los manuales y reglamentos promulgados por AEELA para su funcionamiento estén revestidos de algún grado de irrazonabilidad. A la señora Rodríguez Claudio se le entregó copia del Reglamento para Personal Gerencial y de Alta Gerencia de AEELA promulgado el 31 de enero de 2014, y este hecho fue aceptado por la propia apelante en su oposición a la moción de

---

[80] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 58, pág. 1.
[81] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 4, parte 2, págs. 12 y 20, parte 3, pág. 34.
[82] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 4, parte 1, pág. 6.
[83] *Íd.*
[84] Véase, Entrada Núm. 45 de SUMAC-TPI, Exhibit 4.

sentencia sumaria.[85] Por ende, tenía pleno conocimiento, o al menos debía saber, cuáles eran sus responsabilidades hacia AEELA.

A pesar de las instrucciones impartidas por el Licenciado Pérez Ayala y la Licenciada Blanca Medina, la señora Rodríguez Claudio le insistió en varias ocasiones a sus supervisados a realizar la investigación en el sistema Karibe. Surge de manera diáfana del expediente, que el acto de buscar propiedades inmuebles en Karibe retrasaba la marcha en la presentación de las demandas. Además, no se le requirió que eliminara la búsqueda en Karibe, sino que lo hiciera luego de recomendar como incobrables ciertos casos. Por tanto, somos del criterio que el despido no se realizó por mero capricho de AEELA, sino que estuvo relacionado al buen y normal funcionamiento de ésta. Así, concluimos que el TPI aplicó la *Ley de Despidos Injustificados* y su jurisprudencia interpretativa de forma correcta al caso de epígrafe.

### IV. Parte Dispositiva

En conclusión, adoptamos todas y cada una de las Determinaciones de Hechos formuladas por el foro de instancia, y luego de analizar los errores planteados por la parte apelante, resolvemos que no se configuraron las causas de acción por represalias y despido injustificado.

Por los fundamentos antes expuestos, confirmamos la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[85] Véase, Entrada Núm. 66 de SUMAC-TPI, Determinación de Hecho Núm. 6, pág. 7.